[No. 41771-5-II.   Division Two.   August 28, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JEREMY PAUL MASON, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Jonathan L. Meyer, Prosecuting Attorney*, and *Sara I. Beigh, Deputy*, for respondent.

¶1 VAN DEREN, J. — A jury convicted Jeremy Paul Mason for failing to register as a sex offender in violation of former RCW 9A.44.130 (2006). On appeal, Mason argues the information was constitutionally deficient because the State did not allege that he was required to register "with the county sheriff for the county of the person's residence" and that he failed to do so. Former RCW 9A.44.130(1)(a). We affirm.

## FACTS

¶2 The State charged Mason with failure to register as a sex offender under former RCW 9A.44.130. The amended information alleged:

> On or about and between March 27, 2010, and April 19, 2010, in the County of Lewis, State of Washington, the above-named defendant, having been convicted of a felony sex offense or a federal or out-of-state conviction for an offense that under the laws of this state would be a felony sex offense and having a duty to register as a sex offender under former RCW 9A.44.130 in effect at the time of the charged offense, did knowingly fail to comply with any of the registration requirements of former RCW 9A.44.130 in effect at the time of the charged offense; contrary to former Revised Code of Washington 9A.44.130(11) in effect at the time of the charged offense.

Clerk's Papers at 1-2.

¶3 At trial, Mason stipulated to a prior conviction requiring him to register as a sex offender. According to Thurston

County Detective Darryl Leischner, on April 30, 2007, Mason registered with the Thurston County Sheriff's Office using an address in Rainier, Thurston County. Stephanie Jones, a Thurston County employee, testified that on April 20, 2010, Mason told her "he had been staying the past couple of weeks" in Centralia, Lewis County. Report of Proceedings (RP) at 23. Lewis County Detective Bradford Borden testified that Mason first registered with the Lewis County Sheriff's Office on April 21, 2010. Richard Cannon testified that Mason lived with him in Centralia, Lewis County, for two or three weeks in April 2010.

¶4 After the State rested, Mason moved to dismiss, arguing that the State failed to allege that Mason had a duty to register with the county sheriff, an element of the charge according to Mason. The trial court denied the motion, stating, "I think the deletion of the word or the omission of the word sheriff is not fatal to the information." RP at 47.

## ANALYSIS

### I. CONSTITUTIONALLY SUFFICIENT INFORMATION

#### A. Standard of Review

¶5 Mason generally argues that the amended information was constitutionally deficient because it failed to allege the essential elements of the crime of failure to register as a sex offender. Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, the State must allege in the charging document all essential elements of a crime to inform a defendant of the charges against him and to allow for preparation of his defense. *State v. Phillips*, 98 Wn. App. 936, 939-40, 991 P.2d 1195 (2000) (citing *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991)). A charging document is constitutionally sufficient if the information states each essential element of the crime, whether statu-

tory or nonstatutory, even if it is vague as to some other matter significant to the defense. *Phillips*, 98 Wn. App. at 939. Where, as here, a defendant moves to dismiss an allegedly insufficient charging document before or during trial, we construe the information strictly to determine whether all the elements of the crime charged are included. *Phillips*, 98 Wn. App. at 942-43. We first look to the statute to determine the elements " 'that the prosecution must prove to sustain a conviction.' " *State v. Williams*, 162 Wn.2d 177, 183, 170 P.3d 30 (2007) (internal quotation marks omitted) (quoting *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005)).

B. Failure To Register Statute

¶6 Former RCW 9A.44.130(1)(a) provides:

> Any adult or juvenile residing whether or not the person has a fixed residence, or who is a student, is employed, or carries on a vocation in this state who has been found to have committed or has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence.

A person is guilty of failing to register if he "knowingly fails to comply with any of the requirements" of the registration statute. Former RCW 9A.44.130(11)(a).[1]

¶7 Mason specifically argues that the State failed to allege that his sex offense conviction required him to register " 'with the county sheriff for the county of [his] residence' " or that he failed to register " 'with the county sheriff for the county of [his] residence.' " Br. of Appellant at 5 (quoting former RCW 9A.44.130(1)(a)). The State argues, "Because failure to register is not an alternative means crime there is not a requirement to set forth the subsection or a to wit within the charging language of the information." Br. of Resp't at 6. The State further contends that our Supreme Court's decision in *State v. Peterson*, 168 Wn.2d

---

[1] Former RCW 9A.44.130(11) was recodified as RCW 9A.44.132, effective June 10, 2010. Laws of 2010, ch. 267, § 3.

763, 230 P.3d 588 (2010) compels us to adopt the rule that the essential elements of failure to register are " 'knowingly fail[ing] to comply with any of the requirements of' [former] RCW 9A.44.130." Br. of Resp't at 6 (quoting former RCW 9A.44.130(11)(a)).

¶8 Mason insufficiently briefs his assertion that reference to the county sheriff is an essential element of the crime of failure to register, thus, we do not consider his conclusory arguments. But we disagree with the State's interpretation of *Peterson* and discuss the case to clarify its effect on charging in failure to register cases.

### C. *State v. Peterson*

¶9 Our Supreme Court recently addressed (1) whether failure to register as a sex offender is an alternative means crime with regard to residential status and (2) the essential elements of the crime of failure to register. *Peterson*, 168 Wn.2d at 769, 771. The court directed that although the alternative means and the essential elements issues are "related, they should be analyzed *separately*." *Peterson*, 168 Wn.2d at 771 (emphasis added).

#### 1. Alternative Means Analysis in *Peterson*

¶10 Peterson argued that "failure to register is an alternative means crime because it can be accomplished in three different ways: (1) failing to register after becoming homeless, (2) failing to register after moving between fixed residences within a county, or (3) failing to register after moving from one county to another." *Peterson*, 168 Wn.2d at 769-70. Our Supreme Court observed that "[t]his is too simplistic a depiction of an alternative means crime." *Peterson*, 168 Wn.2d at 770. Because Peterson's conduct was the same in failing to register after changing his residential status, regardless of differing deadlines applicable to what the move entailed, the court held that the nature of the criminal acts that Peterson argued were alternative means was actually the same: "moving without registering." *Peter-*

*son*, 168 Wn.2d at 770. The *Peterson* court also stated in its alternative means analysis:

> [T]he failure to register statute contemplates *a single act* that amounts to failure to register: the offender moves without alerting the appropriate authority. His conduct is the same—he either moves without notice or he does not. The fact that different deadlines may apply, depending on the offender's residential status, does not change the nature of the criminal act: moving without registering.

168 Wn.2d at 770. The court concluded that because Peterson's argument failed to show alternate criminal acts, he had not shown an alternative means crime at all. *Peterson*, 168 Wn.2d at 770-71.

¶11 We caution, however, that applying our Supreme Court's reasoning in *Peterson* that focused solely on Peterson's narrow factual circumstances to other factual circumstances leads to results contrary to the statutory language. The statutory language clearly and expressly establishes multiple circumstances that trigger the registration requirement that do not involve moving from one residence to another (or to none) without notice. Former RCW 9A.44-.130(11)(a) unequivocally states that "knowingly fail[ing] to comply with any of the requirements of this section" constitutes the crime of failure to register.

¶12 The following provisions of the registration statute encompass conduct other than "moving" without notifying the proper authority: former RCW 9A.44.130(1)(b)(i)-(ii) (registered sex offenders must notify county sheriffs of their enrollment in and intent to attend certain public or private schools or institutions of higher education); former RCW 9A.44.130(1)(b)(iii) (registered sex offenders must notify county sheriffs when accepting employment at institutions of higher learning); former RCW 9A.44.130(1)(b)(iv) (registered sex offenders must notify county sheriffs when terminated from enrollment or employment at institutions of higher education); former RCW 9A.44.130(6)(b) (transient registered sex offenders must report weekly to the

county sheriff); former RCW 9A.44.130(7) (risk level II or III registered sex offenders must report in person every 90 days to the county sheriff); former RCW 9A.44.130(8) (registered sex offenders applying to change their legal name must submit a copy of the application and a subsequent order granting the name change, if any, to the county sheriff and state patrol).

¶13 *Peterson* dealt only with the requirements of former RCW 9A.44.130 that required registration after moving, i.e., former RCW 9A.44.130(5)(a) and .130(6)(a). But all violations of former RCW 9A.44.130(11)(a), even those that do not involve moving, are commonly referred to and charged as "failure to register." It is erroneous to interpret *Peterson* in a manner that equates "moving" with other forms of conduct that violate the statute and to hold that these other forms of conduct are encompassed in a charging document that states the defendant " 'did knowingly fail to comply with any of the registration requirements of' [former] RCW 9A.44.130." Br. of Resp't at 6 (quoting former RCW 9A.44.130(11)(a)). Such a reading of *Peterson* either nullifies the other forms of conduct of violating the statute or requires a tortured interpretation of "moving."

## 2. Elements of Failure To Register in *Peterson*

¶14 After quickly disposing of Peterson's alternative means argument based on changing residences, the court then turned to an analysis of the elements of the crime of failure to register, again in the context of Peterson's challenge to his conviction. It limited its discussion of the elements of the crime of failure to register to "only whether residential status is an element because this is the element that Peterson primarily claims the State failed to prove." *Peterson*, 168 Wn.2d at 771. This is the very narrow issue that our Supreme Court later reiterated, "We reject [Peterson's] argument and hold that residential status is not an element of the crime of failure to register"; "an offender's residential status is not an element of the crime of failure to

register." *Peterson*, 168 Wn.2d at 774. Despite the court's broad pronouncements that residential status is not an element of failure to register, its holding is limited to the facts of Peterson's case. The court expressly stated:

> Peterson registered outside of *any deadline* contained in the statute. It was therefore unnecessary to show his particular residential status in order to prove a violation of the statute.
>
> . . . *In this case*, Peterson's specific residential status was not essential to proving the criminal act at issue: that he failed to provide timely notice of his whereabouts under any of the statutorily defined deadlines after vacating his registered address.

*Peterson*, 168 Wn.2d at 772 (second emphasis added).

¶15 Our Supreme Court made clear that it left for future cases whether other facts may constitute essential elements of the crime of failure to register, such as the statutory deadline and the "particular county sheriff to which one must give notice":

> Common sense suggests the statutory deadline is part of the State's burden of proof. It would not be sufficient for the State to prove failure to register within 24 hours, for example. But we need not decide this particular question. The issue before us is whether the offender's *residential status* must be proved in order to convict. Peterson also seems to claim that the particular county sheriff to which one must give notice is an element of the crime because an offender's deadline is different depending on if he moves outside of his county or within it. . . . Where an allegation involves a cross-county move, greater specificity may be required.

*Peterson*, 168 Wn.2d at 771 n.7 (citation omitted).

D. Application of *Peterson*

¶16 The State's argument in this case conflates *Peterson*'s alternative means analysis with its analysis of the elements of the crime in Peterson's case. *See* 168 Wn.2d at 771. This reliance is misplaced and potentially runs afoul

of due process protections against insufficient charging documents.

¶17 Indeed, this case presents a cross-county move that may require greater specificity in the information. Mason argues in his brief, "Because one of the requirements of the statute is the obligation to register 'with the county sheriff for the county of the person's residence,' that obligation is an essential element of the offense." Br. of Appellant at 4 (quoting former RCW 9A.44.130(1)(a)). He further argues that the information failed to include the elements that he was required to register " 'with the county sheriff for the county of [his] residence' " and that he failed to register " 'with the county sheriff for the county of [his] residence.' " Br. of Appellant at 5 (quoting former RCW 9A.44.130(1)(a)). But he fails to provide analysis or citation to authority supporting his conclusory arguments regarding these alleged elements of the crime of failure to register as a sex offender.

¶18 We do not consider conclusory arguments unsupported by citation to authority. *See* RAP 10.3(a)(6), 10.4. "Such '[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.' " *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (alteration in original) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). Thus, we are not compelled to address the substance of his argument and leave to another day determining whether the greater specificity Mason argues was required to adequately charge him with violation of the former registration statute but recognize here that the charge was filed in Lewis County, after Mason relocated there and did not register with the Lewis County Sheriff, and we affirm the trial court.

## II. FACTUAL SUFFICIENCY OF INFORMATION

¶19 Mason also argues that the amended information was factually deficient because it failed to allege particular

facts relating to the offense, such as how Mason violated the statute and the prior conviction that required Mason to register. Mason asserts that because the charging document was factually deficient, he need not demonstrate prejudice.

¶20 Washington courts distinguish between charging documents that are constitutionally deficient because of the State's failure to allege each essential element of the crime charged and charging documents that are factually vague as to some other significant matter. *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005). The State may correct a vague charging document with a bill of particulars. *State v. Leach*, 113 Wn.2d 679, 686-87, 782 P.2d 552 (1989). Mason failed to request a bill of particulars at trial, thus, he waived his vagueness challenge. *Leach*, 113 Wn.2d at 687.[2] Therefore, we hold that Mason waived his challenge on appeal to any vagueness in the charging document. Moreover, Mason does not contend that the language used in the charging document prejudiced him. We reject Mason's challenges to the information.

¶21 We affirm.

WORSWICK, C.J., and ARMSTRONG, J., concur.

Review denied at 176 Wn.2d 1014 (2013).

---

[2] Moreover, Mason's assertion that the information did not specify the prior conviction that required him to register is without merit. Mason stipulated to his prior conviction, rather than requesting a bill of particulars. And in closing, defense counsel conceded that "my client stipulated to the fact that he has a duty to register." RP at 71.